T.C. Memo. 2004-163

UNITED STATES TAX COURT

MARK FOWLER AND JOYLYN SOUTER-FOWLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6650-02L.                    Filed July 13, 2004.

Mark Fowler and Joylyn Souter-Fowler, pro sese.

<u>Guy H. Glaser</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Chief Judge</u>:  Respondent, on February 21, 2002, sent Mark Fowler (petitioner) a Notice of Determination Concerning Collection Action(s) Under Section 6320[1] and/or 6330, in which respondent sustained the filing of a Federal tax lien for

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code.

petitioner's 1990-92 tax liabilities.  In that same notice respondent also rejected petitioner's offer in compromise.  On that same date respondent sent Mark Fowler and Joylyn Souter-Fowler (petitioners) a second Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.  In this notice respondent sustained the filing of a Federal tax lien with respect to petitioners' 1994-96 tax liabilities, and respondent again rejected petitioners' offer in compromise.

Prior to these determinations, petitioners sought and were offered an Appeals hearing, but they did not attend due to personal reasons.  One month after the scheduled hearing date, the Appeals officer issued the above determinations sustaining the filing of the Federal tax liens and rejecting petitioners' offers in compromise.  With respect to both determinations, petitioners appealed to this Court.

The issue for consideration is whether respondent abused his discretion by rejecting petitioners' offers in compromise and by sustaining the filing of the Federal tax liens.

## FINDINGS OF FACT[2]

Petitioners resided in Garden Grove, California, when the petition in this case was filed.

Separate Liabilities

Petitioner filed his 1990 Federal income tax return late on September 6, 1991. On July 21, 1993, respondent mailed a statutory notice of deficiency to petitioner for his 1990 taxable year. Petitioner did not petition this Court to dispute the deficiency. On December 20, 1993, respondent assessed the $399 income tax deficiency and a $98.74 late-filing penalty under section 6651(a)(1). In addition, $104.40 of interest was assessed. Petitioner does not contest the 1990 tax liability.

Petitioner timely filed his 1991 Federal income tax return that contained several mathematical errors. Respondent corrected the mathematical errors in accord with section 6213(b)(1), and assessments were made to correct the errors. Respondent subsequently selected petitioner's 1991 return for an audit examination. On April 5, 1994, respondent mailed petitioner a statutory notice of deficiency for his 1991 taxable year determining a $545 income tax deficiency. Petitioner did not petition this Court with respect to the 1991 notice of

---

[2] The parties' stipulation of facts is incorporated by this reference.

deficiency.  On September 5, 1994, respondent assessed the $545 deficiency and $103.37 of accrued interest.

Petitioner filed his 1992 Federal income tax return late on July 28, 1993.  Respondent selected petitioner's 1992 return for an audit examination.  On January 11, 1995, respondent mailed petitioner a statutory notice of deficiency for his 1992 taxable year determining a $1,193 income tax deficiency and a $189 penalty for late filing under section 6651(a)(1).  On July 17, 1995, respondent assessed the deficiency, the late-filing penalty, and accrued interest in the amount of $265.92.  On the same day, the late-filing penalty was abated leaving an unpaid balance of $1,458.92 for 1992.

Joint Liabilities

Petitioners were married in 1993.  Under cover of a letter dated September 15, 1997, petitioners submitted their untimely 1994, 1995, and 1996 joint Federal income tax returns.  These returns were filed by respondent on September 29, 1997.  Petitioners reported tax due for 1994, 1995, and 1996 on their returns in the amounts of $402.04, $402.03, and $1,480.66, respectively.

On October 27, 1997, respondent assessed the 1994 income tax liability, a late-filing penalty in the amount of $100, a failure to pay tax penalty in the amount of $62.32, and accrued interest in the amount of $128.35, for a total assessment of $692.71.  On

that same date, respondent assessed the 1995 income tax liability, a late-filing penalty in the amount of $100, a failure to pay tax penalty in the amount of $38.19, and accrued interest in the amount of $73.03, for a total assessment of $613.25.  On November 17, 1997, respondent assessed the 1996 income tax liability, a late-filing penalty in the amount of $333.15, a failure to pay tax penalty in the amount of $59.23, and accrued interest in the amount of $99.21, for a total assessment of $1,972.25.

Events Leading to the Issuance of the Notice of Determination

On December 21, 1999, respondent mailed two separate Notices of Intent to Levy and Notice of Your Right to a Hearing to petitioners.  The notices reflected petitioners' unpaid Federal income tax liabilities for 1990 through 1992 and 1994 through 1996.  On January 26, 2000, petitioners informed respondent of their desire to submit an offer in compromise to resolve all of their individual and joint liabilities.  In response, respondent mailed petitioners a package of materials for the submission of offers in compromise for their outstanding individual and joint liabilities.

On April 19, 2000, respondent received petitioners' offer to compromise the 1994 through 1996 joint liabilities for $1,150.  On that same date respondent received petitioner's offer to compromise the 1990 through 1992 liabilities for $360.  Both

offers in compromise were submitted on Form 656, Offer in Compromise. Petitioners' offer was to make monthly payments to satisfy the liabilities. Petitioners planned to pay a portion of the offer amount from their expected tax refund for 1999.

On May 19, 2000, respondent's revenue officer advised petitioners that their offers in compromise could not be processed until petitioners' 1999 Federal income tax return was filed. Under respondent's procedures, offers are not processed while taxpayers are not in compliance with the internal revenue laws.

Petitioners had already filed for an extension of time to file for 1999 because they were awaiting information from third parties to complete the return. On June 15, 2000, respondent filed two Notices of Federal Tax Lien (NFTL) at the county recorder's office in Orange County, California, with respect to the individual and joint tax liabilities. Respondent sent petitioners the filed NFTLs and Notices of Right to a Collection Due Process Hearing. On July 14, 2000, petitioners submitted Form 12153, Request for a Collection Due Process Hearing (administrative hearing), contesting the NFTLs filed by respondent and noting the pending offers in compromise.

Sometime in 2001, petitioners' claims were assigned to respondent's Appeals officer. On June 20, 2001, the Appeals officer and petitioners had a telephone conversation discussing

petitioners' desire to compromise all of the liabilities.  The
Appeals officer requested more information from petitioners,
which they timely provided with a copy of their filed 1999
Federal income tax return.  At some time in the process,
petitioners submitted an amended offer in compromise for $2,400,
to be paid in $100-monthly installments.  Under those terms, the
$2,400-offer could be paid in full in 2 years.

On October 16, 2001, respondent's Appeals officer sent
petitioners a letter informing them that he had reviewed the
offers in compromise.  The Appeals officer determined that the
minimum offer to compromise both the individual and joint
liabilities should be a total of $2,400.  The Appeals officer
used petitioners' estimate of their primary vehicle[3] to calculate
a quick sale value of $2,400, which was determined to be the
minimum acceptable offer.  The Appeals officer then attempted to
determine whether petitioners would be able to meet the monthly
installment offer obligation.  In calculating petitioners'
financial capability, the Appeals officer used petitioners'
submitted monthly gross income figure of $4,608, but did not use
petitioners' submitted $3,989 monthly expense figure.  Instead of
using the $3,989 expense figure provided by petitioners, the
Appeals officer used $4,644, an estimated amount based on

---

[3] Petitioners estimated the value of their primary vehicle
to be $3,000.  Respondent used this figure to calculate the
$2,400 quick sale value.

national statistical averages.  Using $4,644 resulted in petitioners' estimated monthly expenses exceeding their monthly income by $36 and rendering petitioners ineligible due to their projected inability to make the $100-monthly payments.

The Appeals officer rejected petitioners' offers in compromise.  Petitioners requested an in person hearing, but a hearing was not held due to petitioners' unavailability.  On February 21, 2002, respondent issued two separate notices of determination for the individual and joint liabilities sustaining the filing of the notices of Federal tax liens and rejecting petitioners' offers in compromise.  Petitioners timely appealed to this Court for review of respondent's determinations.

OPINION

Petitioners contend that the Appeals officer abused his discretion by rejecting their offers in compromise and by sustaining the filing of the Federal tax liens.

Section 6320 provides that a taxpayer shall be notified in writing by the Secretary of the filing of a Federal tax lien and provided with an opportunity for an administrative hearing.  Sec. 6320(b).  Hearings under section 6320 are conducted in accordance with the procedural requirements set forth in section 6330.  Sec. 6320(c).

When an Appeals officer issues a determination regarding a disputed collection action, section 6330(d) allows a taxpayer to

seek judicial review with the Tax Court or a District Court. Where the validity of the underlying tax liability is properly at issue, the Court will review the matter on a de novo basis. Sego v. Commissioner, 114 T.C. 604, 610 (2000). However, when the validity of the underlying tax is not at issue, the Court will review the Commissioner's administrative determination for an abuse of discretion. Id. Petitioners do not dispute the validity of the underlying tax. Accordingly, our review is for an abuse of discretion.

We do not conduct an independent review of what would be acceptable offers in compromise. We review only whether the Appeals officer's refusal to accept the offers in compromise was arbitrary, capricious, or without sound basis in fact or law. See Woodral v. Commissioner, 112 T.C. 19, 23 (1999). The Court considers whether the Commissioner abused his discretion in rejecting a taxpayer's position with respect to any relevant issues, including challenges to the appropriateness of the collections action, and offers of collection alternatives. See sec. 6330(c)(2)(A). This case involves collection alternatives.

Section 7122(a) authorizes the Secretary to compromise any civil case arising under the internal revenue laws. There are three standards that the Secretary may use to compromise a liability. The first standard is doubt as to liability, the second being doubt as to ability to collect, and the third being

promotion of effective tax administration.  Sec. 301.7122-1T(b),

Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39024 (July 21,

1999); see sec. 7122(c)(1).  The record reflects that

petitioners' offers are with respect to doubt as to

collectibility.[4]

Section 7122(c) provides the standards for evaluation of

such offers.  Under section 7122(c)(2):

> (A) * * * the Secretary shall develop and publish
> schedules of national and local allowances designed to
> provide that taxpayers entering into a compromise have
> an adequate means to provide for basic living expenses.

> (B) Use of schedules.--The guidelines shall
> provide that officers and employees of the Internal
> Revenue Service shall determine, on the basis of the
> facts and circumstances of each taxpayer, whether the
> use of the schedules published under subparagraph (A)
> is appropriate and <u>shall not use the schedules to the
> extent such use would result in the taxpayer not having
> adequate means to provide for basic living expenses</u>.
> [Emphasis added.]

The Appeals officer chose to use the national averages and that

use resulted in petitioners' being categorized as not having

adequate means to provide for basic living expenses.

The national average statistics are published by the

Internal Revenue Service, but use of the statistics by Appeals

officers is not mandatory.  The Appeals officer exercised

discretion in ignoring petitioners' submitted expense amount and,

---

[4] Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the assessed liability.  Sec. 301.7122-1T(b)(3), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39024 (July 21, 1999).

instead, used the national statistical amount as an estimate of petitioners' expenses. The use of the national averages for petitioners' expenses resulted in petitioners' monthly expenses exceeding their monthly income by $36. Therefore, by using the average expense figure, petitioners' income was $136 short of producing the $100 per month needed to compromise their tax liabilities for $2,400. We note that, percentagewise, the shortfall is less than 3 percent of petitioners' gross income. The Appeals officer chose to use the national statistical averages rather than the expense figures provided by petitioners. If the Appeals officer had used petitioners' submitted expense figure of $3,989, petitioners would have had $619 monthly and would have been financially capable of satisfying the $100 installments.

The Appeals officer is allowed to use the national schedules when considering the facts and circumstances of this case. However, if use of the schedules results in petitioners' not having adequate means to provide for basic living expenses, as here when the Appeals officer determined a negative $36 amount for basic living expenses, an installment offer may not be appropriate. See sec. 7122(c)(2)(B).

Under the regulations for doubt as to collectibility cases:

> A determination of doubt as to collectibility will include a determination of ability to pay. In determining ability to pay, the Secretary will permit taxpayers to retain sufficient funds to pay basic

> living expenses. The determination of the amount of such basic living expenses will be founded upon an evaluation of the individual facts and circumstances presented by the taxpayer's case. To guide this determination, guidelines published by the Secretary on national and local living expense standards will be taken into account. [Sec. 301.7122-1T(b)(3)(ii), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39024 (July 21, 1999).]

The regulation provides that the guidelines are to be taken into account. When the Appeals officer reviewed petitioners' offers, he decided to use the guidelines because he thought petitioners' actual figures were too low. In that regard, there is no specific explanation why the Appeals officer believed that petitioners' monthly expenses of $3,989 was too low or why the guideline figure of $4,644 was more accurate. The use of the guideline expense figure resulted in a $136 shortfall in petitioners' capability to meet the $100-monthly installment to satisfy the $2,400 compromise. If petitioners' submitted monthly expenses of $3,989 had been used, there would have been a $619 surplus of income over expenses that would have enabled petitioners to meet the $100-monthly installment to satisfy the compromise.

In essence, the Appeals officer decided that petitioners could not live less expensively than the national average (guidelines). We find it curious that the Appeals officer relied on petitioners' figures for their vehicle and for their income, but chose not to use petitioners' figures for their monthly

expenses.  Petitioners made an estimate of $3,000 for the value of their primary car and the Appeals officer used this figure to calculate the quick sale value of $2,400.  Based on this premise, the Appeals officer determined that an offer of $2,400 would be an appropriate amount to settle the outstanding liabilities due for 1990-92 and 1994-96.  The Appeals officer requested a lump-sum payment through the sale of petitioners' primary vehicle. Petitioners rejected this approach as this was their primary vehicle and to sell it would have caused great financial harm.

Petitioners submitted an amended offer in compromise for $2,400, to be paid in $100 monthly installments.  Under those terms, the $2,400 compromise could be paid in full in 2 years. That offer was rejected due to the Appeals officer's determination that petitioners were financially unable to make the payments.  We note that petitioners had cooperated with all requests from the Internal Revenue Service in an attempt to resolve this matter.

Appeals officers, in the consideration of an offer in compromise should verify that the requirements of applicable law and administrative procedures have been met, and "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." See sec. 6330(c)(3)(C).  The verification of applicable law and

administrative procedure was met in this case.  However, it is questionable as to whether the proposed collection action balanced the need for efficient collection of taxes with the concern of petitioners that any collection action be no more intrusive than necessary.

Payment plans are one possible option for an offer in compromise.  According to the instructions that accompany the Form 656, there are three possible payment plans under the short-term deferred payment offer.  One plan requires full payment of the realizable value of assets within 90 days from the date the Internal Revenue Service accepts the offer, and payment, within 2 years of acceptance of the amount that they could collect over 60 months.  A second plan permits a cash payment for a portion of the realizable value of petitioners' assets within 90 days of the offer being accepted, and the balance of the realizable value plus the remainder of the amount that could have been collected over 60 months within 2 years.  The third plan permits monthly payments of the entire offer amount over a period not to exceed 2 years from the date of acceptance by the Internal Revenue Service.  Petitioners offered $100 per month for 2 years or 24 months, which equals the $2,400-compromise amount.[5]

---

[5] Although not relevant to the facts of this case, there is also a deferred payment offer that provides for a plan similar to the short-term deferred plan (the third plan described above).  The deferred payment plan allows the entire offer amount to be

(continued...)

Under the various payment options, respondent would be able to file Federal tax liens to protect his interests until such time as the liability is satisfied. Accordingly, respondent's interest would be protected through the liens while respondent received monthly payments. The result of the Appeals officer's financial analysis, however, was to deny petitioners' offers in compromise. To use the national guidelines rather than actual figures in this instance was arbitrary, capricious, and without a sound basis in fact. Petitioners have stated that they are still willing to compromise their tax liabilities for $2,400, but through monthly payments rather than a lump-sum payment.[6]

Therefore, based on the facts and circumstances of this case, we hold that respondent abused his discretion in denying petitioners' offer to compromise their tax liabilities for

---

[5](...continued)
made in monthly payments over the life of the collection statute. The deferred plan could result in a longer payment period than 24 months.

[6] Petitioners and respondent agreed on the amount of the compromise. The only disagreement here is the method of payment. Based on the financial information submitted by petitioners, a payment plan is a reasonable option.

$2,400.  We further hold that respondent did not abuse his discretion in sustaining the filing of the Notices of Federal Tax Liens.[7]

An appropriate decision will be entered.

---

[7] Petitioners have made no argument of merit from which an abuse of discretion could be found with respect to respondent's determination that the filing of the Notices of Federal Tax Liens was appropriate.